**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

MELISSA A. MITCHELL,
on behalf or herself and all others
in the State of Florida similarly situated,

      Plaintiffs,

v.                                                       Case No. 8:17-cv-376-T-24AAS

PRECISION MOTOR CARS INC.,
d/b/a MERCEDES-BENZ OF TAMPA,

      Defendant.
_____/

## **ORDER**

This cause comes before the Court on two motions: (1) Defendant's Motion to compel arbitration and stay proceedings (Doc. 4), Plaintiff's response thereto (Doc. 7), and Defendant's reply to Plaintiff's response (Doc. 14); and (2) Defendant's motion for evidentiary hearing in support of its motion to compel arbitration (Doc.12), Plaintiff's response thereto (Doc. 15), and Defendant's reply to Plaintiff's response (Doc. 20). Defendant, Precision Motor Cars Inc. d/b/a Mercedes-Benz of Tampa ("Precision"), seeks to compel this dispute to arbitration based on an arbitration agreement contained in a credit application purportedly signed by Plaintiff, Melissa A. Mitchell. But Precision cannot locate the signed credit application, and Mitchell unequivocally states that the credit application she signed did not incorporate an arbitration agreement. Because there is a genuine dispute of material fact over the very existence of an agreement to arbitrate between the parties, a trial on this issue is warranted pursuant to 9 U.S.C. § 4.

1

## I. Background

In her complaint, Mitchell alleges that she completed and submitted a credit application to Precision, a car dealership. According to Mitchell, after denying her application for credit, Precision failed to provide a statement of reasons within 30 days as required by the federal Equal Credit Opportunity Act, 15 U.S.C. § 1691 (the "ECOA").

Precision now seeks to compel Mitchell's claims to binding arbitration, asserting that the credit application she submitted incorporated an arbitration agreement. Precision states that in order to apply for credit, Mitchell would have completed a credit application with an incorporated arbitration agreement. But, by its own admission, Precision is "presently unable to locate" Mitchell's signed credit application. (Doc. 4, p. 7). In support of its motion, Precision attaches the affidavit of Larry Pfingsten, the salesman who assisted Mitchell. (Doc. 5). Attached to this affidavit is a blank, unsigned "Automobile Purchaser/Lessee's Credit Application (Personal)." (*Id.* at pg. 5). This credit application contains an incorporated "Important Contract of Arbitration." (*Id.* at pp. 5–6). Pfingsten testifies in his affidavit that Mitchell filled out and signed a credit application on this form. (*Id.* at p. 4). Moreover, he states that this credit application was the only one used by Precision at the time. (*Id.* at p. 5). According to Precision, Pfingsten's affidavit, in combination with Mitchell's allegation in her complaint that she completed a credit application when she visited the dealership, is proof of the existence of an agreement to arbitrate between the parties.

However, Mitchell has submitted her own affidavit in which she states she "can unequivocally say the application [she] completed and signed is not the one claimed by the Defendant," and provides a detailed description of the credit application she purportedly signed.

(Doc. 8, ¶¶ 5–6). Importantly, she testifies that "[t]he application [she] signed did not contain an arbitration clause." (*Id.* at ¶ 6.H.).

## II. Legal Analysis

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16, applies to arbitration agreements involving interstate commerce, including claims brought under the ECOA. *See* 9 U.S.C. § 2; *Scott v. EFN Invs., LLC*, 312 Fed. App'x. 254 (11th Cir. 2009).[1] When a party requests an order compelling arbitration under the FAA, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. However, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *Id.*

The existence of a valid written agreement to arbitrate is a threshold issue which is "'simply a matter of contract.'" *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). "Absent such an agreement, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" *Id.* (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)).

---

[1] Mitchell's argument that the FAA does not apply because the credit application she purportedly signed does not involve interstate commerce is not well taken. First, both of Mitchell's claims against Precision are for violations of the *federal* Equal Credit Opportunity Act. It seems illogical for Mitchell on one hand to assert federal claims against Precision and on the other to deny that the credit application from which her claims arose affects interstate commerce. In any event, Mitchell completed a credit application for the purpose of financing the purchase of a vehicle from an automobile dealer. This constitutes interstate commerce. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 58 (2003) ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause.").

Moreover, while the FAA "embodies a liberal federal policy favoring arbitration agreements," this presumption does not apply to disputes concerning whether an agreement to arbitrate exists at all. *Id.* (citation and internal quotations marks omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (directing courts to "apply[ ] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement").

The Eleventh Circuit recently made clear that "'*state law* generally governs whether an enforceable contract or agreement to arbitrate exists.'" *Bazemore*, 827 F.3d at 1329 (quoting *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)); *see also First Options*, 514 U.S. at 944 ("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). To prove the existence of a contract under Florida law,[2] the party seeking to enforce the contract must prove by a preponderance of the evidence: "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe. Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)); *see also Knowles v. C.I.T. Corporation*, 346 So. 2d 1042, 1042 (Fla. 1st DCA 1977) ("It is elementary that in order to recover on a claim for breach of contract the burden is upon the claimant to prove by a preponderance of the evidence the existence of a contract . . . .").

---

[2] While neither the credit application Precision asserts Mitchell signed nor the arbitration agreement Precision seeks to enforce contains a choice-of-law provision, it is undisputed that Mitchell signed a credit application of some form at Precision's dealership in Florida, and Mitchell's claim arose in Florida. Further, it does not appear that the parties dispute the application of Florida law. Accordingly, Florida law applies. *See Tranchant v. Ritz Carlton Hotel Co., LLC*, No. 2:10-cv-233-FtM-29DNF, 2011 WL 1230734, at *3 (M.D. Fla. March 31, 2011).

While the FAA provides for a "trial" to establish the existence of an arbitration agreement, *see* 9 U.S.C § 4, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement" under a "summary judgment-like standard," *Bazemore*, 827 F.3d at 1333. Thus, only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. *Id.* (citing Fed. R. Civ. P. 56(a)). "A dispute is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Id.* (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)) (internal quotation marks omitted). Moreover, "conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Id.* (citation and internal quotation marks omitted).

Here, Precision seeks to compel arbitration pursuant to a credit application it is "presently unable to locate." Mitchell argues that Precision has failed to establish the existence of a valid agreement to arbitrate because: 1) Precision has not carried its burden of proving that Mitchell signed the credit application with the incorporated arbitration agreement; and 2) even if Mitchell signed the Credit Application asserted by Precision, the agreement to arbitrate is not supported by sufficient consideration.[3] The Court will address each argument in turn.

---

[3] Mitchell also argues that Precision waived its right to arbitrate by failing to retain a copy of the credit application. This argument is meritless and does not warrant further discussion. *See Cent. Fla. Roofing, LLC v. Stevens Roofing Sys.*, No. 8:12-cv-1170-T-23MAP, 2013 WL 5673507, at *2 (M.D. Fla. Oct. 17, 2013) ("And, needless to say, although the [FAA] requires proof of a written agreement to arbitrate, the [FAA] does not require a party to produce either the original or a tangible copy of the writing. Proof of the written agreement suffices.").

### A. A genuine issue of material fact exists as to the whether the parties entered into an arbitration agreement.

Despite its inability to locate the arbitration agreement purportedly signed by Mitchell, Precision has presented: 1) an unsigned credit application which incorporates an arbitration agreement; 2) Pfingsten's testimony that Mitchell completed and signed the credit application containing an arbitration agreement; and 3) Pfingsten's testimony that this was the only credit application utilized by Precision at the time. The Court is convinced that this is competent evidence supporting the existence of such an agreement to arbitrate

But Mitchell's affidavit testimony provides more than conclusory allegations to support her position that the parties never agreed to arbitrate. Mitchell unequivocally denies that she completed the credit application claimed by Precision. And she provides a detailed description of the credit application she allegedly signed. This is more than a "mere scintilla of evidence" and is sufficient to create a genuine issue of fact as to whether the parties agreed to arbitrate. *Balco*, 767 F.3d at 1246; *see also Bazemore*, 827 F.3d at 1333 (noting in dicta that the plaintiff could have presented an affidavit swearing under oath that she never received the arbitration agreement the defendant sought to enforce).

Given the evidence presented, the Court finds that a genuine issue of material fact exists as to the whether the parties entered into an arbitration agreement. Consequently, under the "summary judgment-like" *Bazemore* standard, the Court cannot conclude as a matter of law that the parties did or did not enter into an arbitration agreement.

### B. The agreement to arbitrate is supported by sufficient consideration.

Mitchell argues that even if she signed the credit application Precision purports she signed, the incorporated agreement to arbitrate is not supported by consideration. Thus, she contends there is no valid agreement to arbitrate between the parties. Precision, citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006), responds that this argument is irrelevant as the law is well-settled that challenges to the validity of a contract as a whole, rather than the arbitration clause within it, must go to the arbitrator. But the issue of whether the necessary elements of a contract are present is not a challenge to the validity of the contract— rather, it is a question of the very existence of a contract. Such challenges must be resolved by the district court. *Wiand v. Schneiderman*, 778 F.3d 917, 924 (11th Cir. 2015) ("Challenges to the validity of the contract as a whole are for the arbitrator to decide, whereas challenges to the validity of the arbitration clause in particular or to the very existence of the contract must be resolved by the court before deciding a motion to compel arbitration."); *see also Buckeye*, 546 U.S. at 444 n.1 (noting that the issue of whether an agreement was ever concluded, as opposed to the issue of a contract's validity, is for the courts, not the arbitrator, to decide).

To determine whether the arbitration agreement is supported by sufficient consideration, the Court must turn to Florida law. *See Caley,* 428 F.3d at 1368 ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). Under Florida law, the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same. *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355 (Fla. 2d DCA 2005) (citations omitted). Here, the Important Contract of Arbitration states "[i]f any of us chooses, any dispute between or among us will be decided by arbitration and not in court." (Doc.

7

5, p. 6). Accordingly, if Mitchell signed the credit application incorporating the Important Contract of Arbitration, the arbitration agreement is supported by sufficient consideration.[4] Mitchell's argument is therefore without merit.

### C. A trial is necessary to determine whether an agreement to arbitrate exists.

Precision also requests that the Court, before ruling on the motion to compel arbitration, allow the parties time to engage in discovery and then conduct an "evidentiary hearing" on the issue of the existence of an arbitration agreement. (Doc. 12). Mitchell counters that the FAA requires a jury trial to resolve genuine disputes involving the formation of a contract to arbitrate. (Doc. 15).

As noted above, the Court cannot conclude as a matter of law whether Precision and Mitchell did or did not enter into an arbitration agreement. Under these circumstances, the proper procedure is for the Court to "proceed summarily" to a trial to determine whether an agreement to arbitrate exists. 9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."); *cf. Bazemore*, 827 F.3d at 1333 (reasoning that a trial pursuant to 9 U.S.C. § 4 was unnecessary because the defendant had failed to offer competent evidence to raise a genuine issue fact as to the existence of an arbitration agreement and therefore the court could deny the motion to compel arbitration as a matter of law).

---

[4] In other parts of her motion, Mitchell appears to argue that the credit application itself is not a contract. The issue before this Court is whether the agreement to arbitrate is a valid contract, not the credit application. The Court makes no comment as to whether the credit application, apart from the Important Contract of Arbitration, constitutes a valid contract. *See Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835 (8th Cir. 1997) (noting that the arbitration clause was separate from the other provisions of an employee handbook and constituted a separate and enforceable contract).

### III. Conclusion

Upon consideration, it is hereby **ORDERED AND ADJUDGED**:

1. This matter will proceed to trial on the question of whether an arbitration agreement exists between Mitchell and Precision.

2. This case is set for a status conference on April 20, 2017 at 9:00 a.m. to discuss the case management plan that includes suggested dates for the completion of discovery limited to issues related to the existence of an arbitration agreement and whether either party demands a jury trial as to that issue.

3. The Court will **DEFER RULING** on Precision's motion to compel arbitration (Doc. 4).

4. Precision's motion for an evidentiary hearing (Doc. 12) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on the 14th day of April, 2017.

SUSAN C. BUCKLEW
United States District Judge